Clovis GORDON et al.

v.

SS VEDALIN.

Dimos PAPAGEORGIOU and Marikas Politis, Intervening Complainants,

v.

SS VEDALIN.

Civ. A. No. 72-190.

United States District Court,
D. Maryland.

July 31, 1972.

---

Murray I. Resnick, Philip Abraham and Berenholtz, Kaplan & Heyman, Baltimore, Md., for original complainants and intervening complainants.

John S. Collins, Glen Burnie, Md., for Harold Johnson and Harold's Trading Post, Inc., defaulting purchasers.

NORTHROP, Chief Judge.

The present proceedings were initiated by the libellants of the vessel SS VE-DALIN in order to enforce the liability of a defaulting Marshal's sale purchaser to pay for the expenses attendant upon re-sale of the vessel. The VEDALIN was libelled by certain of her crew upon her arrival in the Port of Baltimore, and pursuant to order of this Court the vessel was sold at auction by the United States Marshal on March 13, 1972, to the high bidder for the sum of $15,000.-00. A down payment of $1,500.00 in cash was paid to the Marshal, the sale was duly confirmed, but the purchaser defaulted on his obligation to pay the balance of the sale price. In view of the condition of the vessel and the fact that she was manned by foreign seamen who lacked means of repatriation, this Court ordered the immediate re-sale of the vessel by order dated March 23, 1972. The order of re-sale specifically stated that the defaulting first purchaser would be "responsible for all costs in connection with the resale, maintenance of the vessel, and all other expenses incident to proper custody of the vessel pending re-sale, and . . . any deficiency which may result from the sale of the vessel, in addition to all costs and ex-penses incident to the resale of the vessel." The motion and order of re-sale was duly served by the Marshal upon the defaulting first purchaser on March 25, 1972, and re-sale of the vessel was duly made on April 3, 1972, the purchaser at the second sale having bid $19,600.00. Title has been conveyed to the re-sale purchaser.

■■■ The first question to be resolved in the case is, strangely enough, the identity of the defaulting purchaser. The bid was made by one Harold Johnson, but the Marshal's receipt for the down payment shows the purchaser to have been Harold's Trading Post, Inc., a Maryland corporation admittedly closely connected with Mr. Johnson and his immediate family. The Court had the benefit of testimony at a hearing held in this matter on July 27, 1972, and the Court has concluded that Mr. Johnson made the purchase not on his own behalf, but as agent for Harold's Trading Post, Inc. This conclusion was compelled by the only evidence in the case, that being the testimony of Mr. Johnson to the effect that he bid as agent of the corporation, that the corporation was to receive the profits of the subsequent disposition of the vessel, and that the purchase was not completed because several persons in Miami who had pledged financing support backed out at the last minute, thus leaving the corporation without funds to complete the purchase. Under these circumstances, there is no indication that personal liability should be imposed upon Mr. Johnson for the default of the corporation, for, under Maryland law, an agent who makes a contract for and on behalf of a corporate principal is personally liable on the obligation only in the presence of fraud, and the burden of proof of the fraud rests upon the creditor. Ace Development Co. v. Harrison, 196 Md. 357, 76 A.2d 566 (1950). There is not the slightest evidence in this case that the purchase of the VEDALIN was contaminated with fraud on the part of Mr. Johnson, as agent, or on the part of the corporation as principal.

Even though the obligation to purchase was that of the corporation, it is still possible that personal liability therefor could be imposed upon Mr. Johnson under certain circumstances. Evidence was adduced at the hearing of July 27 which tended to show that the corporation was initiated to give Mr. Johnson a chance to engage in business, which he could not do in his individual capacity because of some $20,000.00 in judgments outstanding against him. There was also evidence tending to show that the corporation was never properly capitalized, but it seems that this fact alone is not enough to pierce the corporate veil in this case, especially in view of the fact that the corporation was to engage in the purchase and sale of merchandise as and when the opportunity (such as the VEDALIN) arose, and was not a business such as manufacturing which requires a substantial initial capitalization or maintenance of cash reserves. Apparently, the transactions of the corporation were to be financed in the manner contemplated by the VEDALIN venture, that is, the borrowing of capital on a situation-by-situation basis. Further, there was significant doubt from the evidence that the legal niceties of corporate existence, such as the formal issuance of stock and corporate meetings, were regularly, if ever, observed. It was established, however, that the Articles of Incorporation of Harold's Trading Post, drawn by an attorney, were duly filed with the Department of Assessments and Taxation. Even though the proof of the existence of the corporation as a separate entity and not as the mere alter ego of Harold Johnson is tenuous at best, it seems that, under Maryland law, the corporate entity cannot be disregarded in this case. The rule seems to be that the shareholders of a corporation are not to be held personally answerable for the obligations of the corporation in the absence of fraud or of the necessity of protecting a paramount equity. Damazo v. Wahby, 259 Md. 627, 270 A.2d 814 (1970). Neither of these indicia are present in the instant case, and it is, consequently, the conclusion of this Court that any liability in this matter must be borne solely by Harold's Trading Post, Inc.

There quite obviously is no question of a deficiency judgment being entertained against Harold's Trading Post, Inc., for the simple reason that the second sale brought in more than the bid offered at the first sale. However, the Court is faced with the question of what to do about the expenses incident to the re-sale of the vessel, which expenses amount to $4,029.70. Harold's Trading Post, Inc., was given adequate and proper notice that the re-sale of the vessel was to be at its expense, in that the order of re-sale was personally served upon Mr. Johnson, its agent, almost a week prior to the date of the re-sale. The motion for re-sale was not answered until April 7, 1972, four days after the re-sale had been made, although the corporate "knowledge" of the event of the re-sale is quite evident from the fact that Mrs. Johnson, an officer of the corporation, was present at the said re-sale, and, in fact, made a bid of $5,000.00 at the said re-sale. At any rate, Harold's Trading Post, Inc., had ample opportunity to object to the re-sale before the date duly set therefor, and failed so to do, and this Court holds that sufficient notice was given to give this Court jurisdiction to proceed against the corporation for the expenses of the re-sale. Bayne v. Brewer Pottery Co., 90 F. 622 (CC, N.D. Ohio 1898).

The next question in the present proceedings is the mode of enforcement of the liability for expenses of re-sale. The Supreme Court held in the case of Stuart v. Gay, 127 U.S. 518, 8 S.Ct. 1279, 32 L.Ed. 191 (1888), that there is no need to proceed against a defaulting purchaser in the judicial sale situation by original bill, but that the liability of the defaulting purchaser, whether to pay the balance of the purchase price, or to pay incident expenses, may be by a bill

or rule to show cause ancillary to the main proceedings in the cause. And in Camden v. Mayhew, 129 U.S. 73, 9 S.Ct. 246, 32 L.Ed. 608 (1889), the Court held that a purchaser who fails to complete a judicial sale ordered by a court of the United States will be liable for any deficiency upon re-sale *plus* "costs rendered necessary by his failure to comply with the terms of [the first] sale." As to the procedure to be employed to enforce the liability, the Court held that it could be enforced "in the same suit by rule, or in any other mode devised by the court that will enable him to meet the issue as to his liability." 129 U.S. 73 at 86, 9 S. Ct. 246 at 249. Since the Federal Rules of Civil Procedure have abolished the old rule practice pertaining to rules nisi and orders to show cause, 5 Wright and Miller, Fed. Practice and Procedure (Civil), § 1195, and since there is authority to the effect that a proper way for an admiralty court to enforce the liability of a reluctant purchaser is by citation for contempt of court, The President Arthur, 18 F.2d 749 (2d Cir. 1927); The Kate Williams, 14 Fed.Cas., p. 148 (No. 7,623); August Honerkamp L. Co. v. Steves Lumber & Bldg. Co., 95 F.2d 593 (5th Cir. 1938), the Court feels that this proceeding by way of citation for contempt certainly fulfills the mandate of the Supreme Court, handed down in the Camden v. Mayhew case, to the effect that the Court may enforce the liability of the defaulting purchaser in any way sufficient to enable him to meet the issue as to his liability.

What remains, then, is to set the fine which Harold's Trading Post, Inc., as defaulting purchaser, must pay to purge itself of the contempt. The expenses of re-sale were $4,029.70. The deposit of Harold's Trading Post, Inc., which quite obviously must be forfeited, was $1,500.00, which, when deducted from $4,029.70 leaves a balance owing of $2,529.70. It seems to this Court that no credit should be given for the increase in price obtained at the re-sale, which increase amounted to $4,600.00. Quite obviously, were this the case, Har-

old's Trading Post, Inc. would be entitled to a bounty of some $570 for its *conduct in ignoring its contract of purchase with the court.* Although there is no authority directly on this point in the Federal Reports, the case of United States v. Branch Coal, 390 F.2d 7 (3d Cir. 1968), in which the Third Circuit affirmed the District Judge's order forfeiting the deposit of a defaulting purchaser of realty and approved his disbursement thereof to defray expenses of re-sale, seems instructive to the Court in this regard. It was said in that case that "We will not permit a successful bidder to impinge upon the integrity of his contract with the court, especially when the bidder's subsequent loss is occasioned solely by his own fault." 390 F.2d 7 at 10. This is, after all, a matter of balancing equities, and the short answer is that the benefit of an increased price on re-sale should inure to the benefit of the distressed foreign seamen and other creditors of the vessel who obtain nothing but delay from the default of a sale purchaser. Thus, the Court specifically rejects the contention expressed in the Maryland cases, most notably in Continental Trust Co. v. Baltimore Refrigerating, 120 Md. 450, 87 A. 947 (1913), to the effect that a purchaser may speculate upon the outcome of a re-sale at the expense of the creditors of the *res,* and that if the ante is upped at re-sale, the defaulting purchaser, as equitable owner, is entitled to the extra money. Rather, this Court holds that the equities of the matter compel the conclusion that, upon default, the contract of the first purchaser terminates and is superseded by whatever order respecting re-sale is entered by the Court, and, in the absence of a direction in the order as to the distribution of any excess brought in at re-sale, the excess is to be distributed to the petitioning creditors of the *res* sold.

Consequently, this Court finds that Harold's Trading Post, Inc., is in contempt of court and that it be fined in the amount of $2,529.70, payment of which will purge the contempt.

The Court wishes to stress that this fine does *not* represent a penalty for criminal contempt, but is, rather, compensation for the losses which have been occasioned by way of extra costs on re-sale of the vessel. This is wholly a civil contempt proceeding, and it is undisputed that the District Court has power in a civil contempt case to set a fine and to make that fine take the form of a judgment in favor of any party who has suffered a loss on account of the contemnor's contempt. McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949); United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (Judicial sanctions in a civil contempt case may be employed "to compensate the complainant for losses sustained." 330 U.S. at 304, 67 S.Ct. at 701); Clark v. Boynton, 362 F.2d 992 (5th Cir. 1966); and, in this circuit, Folk v. Wallace Business Forms, 394 F.2d 240 (4th Cir. 1968). In this case, the report of the Marshal (Docket Entry No. 35) shows that all expenses of the re-sale have been paid out of the proceeds thereof, and since it is the opinion of this Court that the petitioning seamen are entitled to the full benefits of the proceeds of the re-sale, in accordance with the principles stated hereinabove, it is clear that the $2,529.70 owing by Harold's Trading Post, Inc., should be paid over to the libellants to make whole the losses occasioned by the default of the Trading Post. This would put the libellants in the position they would have been in had there been no default, taking into consideration, of course, that the Trading Post should receive absolutely no benefit from its wrong in failing to complete the purchase.

Consequently, in accordance with the procedure outlined in Folk v. Wallace, *supra,* this Court assesses damages against Harold's Trading Post, Inc., and in favor of the libellants and intervening libellants herein, in the amount of $2,529.70, said sum to be paid into the registry of the Court for distribution to the persons entitled to receive the proceeds of the sale of the SS VEDALIN in this case. Therefore, judgment will be entered in favor of all parties plaintiff herein and against Harold's Trading Post, Inc. in the amount of $2,529.70. Counsel are to submit an order in accordance with this opinion providing for the entry of judgment, payment of the proceeds into the registry of the Court and distribution to the parties plaintiff as ordered from time to time by the Court.